UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MICHAEL WILSON,

                              Plaintiff,      :    Case No. 17-CV-5012

                 - v -          :    (RRM)(CLP)

NEW YORK AND PRESBYTERIAN HOSPITAL
d/b/a NEW YORK-PRESBYTERIAN HOSPITAL,    :

                         :    **Oral Argument Requested**

                 Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

<br>

# DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

<br>

EPSTEIN BECKER & GREEN, P.C.
875 Third Avenue
New York, New York 10022
(212) 351-4500

*Attorneys for Defendant*
*The New York and Presbyterian Hospital*

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION .................................................................................................... 1

RELEVANT FACTS ............................................................................................... 2

   A.    The Parties ................................................................................................ 2

   B.    The Hospital Maintained Strict Policies Prohibiting Discrimination, Harassment and Retaliation................................................................................................ 3

   C.    Plaintiff's Job Duties As a Projectionist................................................... 4

   D.    Plaintiff Complains to HR About His Female Supervisor ....................... 5

   E.    Plaintiff's Status Change from Exempt to Non-Exempt ......................... 5

   F.    Plaintiff's Frequent Requests for Time Off and Rejection of Overtime Assignments ................................................ 6

   G.    Plaintiff's Repeated Instances of Poor Performance and Misconduct Between 2014 and 2015......................................... 7

   H.    Plaintiff's 2015 Performance Evaluation Addresses His Unprofessional and Disruptive Conduct...................................... 7

   I.    Plaintiff's Poor Conduct and Disruptive Behavior Continues in 2016 .................. 8

   J.    Termination of Plaintiff's Employment ................................................... 9

   K.    Plaintiff Wrote Self-Serving Notes and Letters In Aid of This Litigation ............. 10

ARGUMENT ......................................................................................................... 10

   POINT I: SUMMARY JUDGMENT SHOULD BE GRANTED FOR THE HOSPITAL ON PLAINTIFF'S DISCRIMINATION CLAIM ................................................... 10

   A.    Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination......................... 11

      1.   The Alleged Discriminatory Words Do Not Constitute Adverse Employment Actions ................................................................................ 11

      2.   Isolated Stray Remarks Cannot Give Rise To An Inference of Unlawful Discrimination........................................................................................ 13

   B.    The Hospital Had Legitimate, Non-Discriminatory Reasons for Terminating Plaintiff, Which Were Not a Pretext For Unlawful Discrimination....................... 13

   POINT II: SUMMARY JUDGMENT SHOULD BE GRANTED FOR THE HOSPITAL ON PLAINTIFF'S  HOSTILE WORK ENVIRONMENT CLAIMS ................... 16

   POINT III: SUMMARY JUDGMENT SHOULD BE GRANTED FOR THE HOSPITAL ON PLAINTIFF'S RETALIATION CLAIMS ............... 18

   A.    Plaintiff Cannot Establish His *Prima Facie* Retaliation Claims Under the FLSA, NYLL, or NYSHRL ................................................................................ 19

i

1.   Plaintiff Cannot Establish Any of the Elements of a *Prima Facie* Retaliation Claim Under the FLSA ........................................................................................................... 19

2.   Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation Under the NYLL ....... 21

3.   Plaintiff Cannot Establish His *Prima Facie* NYSHRL Retaliation Claims ................ 22

B.   The Hospital Has Met Its Burden By Setting Forth Its Reasons for Terminating Plaintiff's Employment, Which Are Not Pretextual .............................................. 23

C.   Plaintiff's State Law Retaliation Claims Are Preempted By The NLRA ............. 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bakeer v. Nippon Cargo Airlines, Co.*,
  No. 09-CV-3374, 2011 WL 3625103 (July 25, 2011) ............................................................22

*Boata v. Pfizer, Inc.*,
  No. 10 Civ. 4390, 2013 WL 432585 (S.D.N.Y. Jan. 31, 2013),............................................14

*Dixon v. Int'l Fed'n of Accountants*,
  No. 10-CV-1924, 416 F. App'x 107 (2d Cir. Mar. 25, 2011)................................................13

*Domnister v. Exclusive Ambulette, Inc.*,
  607 F.3d 84 (2d Cir. 2010).....................................................................................................25

*Forrest v. Jewish Guild for the Blind*,
  3 N.Y.3d 295 (2004) ..............................................................................................................16

*Garrett v. Garden City Hotel, Inc.*,
  No. 05-CV-962, 2007 WL 1174891 (E.D.N.Y. Apr. 19, 2007) .......................................20, 22

*Grady v. Affiliated Cent., Inc.*,
  130 F.3d 553 (2d Cir. 1997)....................................................................................................15

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993)............................................................................................................16, 18

*Hernandez v. Kaisman*,
  103 A.D.3d 106 (1st Dep't 2012) ...........................................................................................16

*Hicks v. Baines*,
  593 F.3d 159 (2d Cir. 2010)...............................................................................................18, 19

*Ifill v. United Parcel Serv.*,
  No. 04-CV-5963, 2008 WL 2796599 (S.D.N.Y. July 17, 2008) .......................................16, 17

*Joseph v. Leavitt*,
  465 F.3d 87 (2d Cir. 2006)......................................................................................................12

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
  716 F.3d 10 (2d Cir. 2013)......................................................................................................22

*Krasner v. HSH Nordbank AG*,
  680 F. Supp. 2d 502 (S.D.N.Y. 2010).........................................................................17, 22, 23

*Mathirampuzha v. Potter*,
  548 F.3d 70 (2d Cir. 2008)...................................................................................12

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)...........................................................................................11

*Meiri v. Dacon*,
  759 F.2d 989 (2d Cir. 1985)..............................................................................14

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010)...........................................................................18, 19

*NLRB v. City Disposal Sys., Inc.*,
  465 U.S. 822 (1984)...........................................................................................24

*Pooniah Das v. Our Lady of Mercy Med. Ctr.*,
  No. 00-CV-2574, 2002 WL 826877 (S.D.N.Y. Apr. 30, 2002) ...........................14

*Quintanilla v. Suffolk Paving Corp.*,
  09-CV-5331, 2019 WL 885933 (E.D.N.Y. Feb. 22, 2019) .............................18, 19

*Ray v. Weit*,
  No. 13-CV-6415, 2016 WL 1229056 (E.D.N.Y. Mar. 28, 2016)...........................12

*Richards v. N.Y. City Dep't of Educ.*,
  No. 13-CV-16, 2015 WL 4164746 (S.D.N.Y. July 10, 2015) ...............................14

*Ruiz v. County of Rockland*,
  609 F.3d 486 (2d Cir. 2010)..............................................................................14

*Russo v. New York & Presbyterian Hosp.*,
  972 F. Supp. 2d 429 (E.D.N.Y. 2013) .................................................................16

*San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*,
  359 U.S. 236 (1959)...........................................................................................25

*Sethi v. Narod*,
  12 F. Supp. 3d 505 (E.D.N.Y. 2014) ...................................................................12

*Silva v. Peninsula Hotel*,
  509 F. Supp. 2d 364 (S.D.N.Y. 2007)...................................................................14

*Sotomayor v. City of New York*,
  862 F. Supp. 2d 226 (E.D.N.Y. 2012) .................................................................11

*Szarzynsky v. Roche Labs., Inc.*,
  07-CV-6008, 2010 WL 811445 (W.D.N.Y. Mar. 1, 2010) ...................................23

iv

*Univ. of Texas Southwestern Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013).............................................................................................19, 24

*Vinokur v. Sovereign Bank*,
    701 F. Supp. 2d 276 (E.D.N.Y. 2010) .............................................................20, 22

*Watkins v. First Student, Inc.*,
    No. 17-CV-1519, 2018 WL 1135480 (S.D.N.Y. Feb. 18, 2018)...........................19

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ............................................... *passim*

New York Labor Law, N.Y. Lab. Law § 201-d.......................................................1, 24

National Labor Relations Act, 29 U.S.C. § 151 *et seq.* .......................................2, 24, 25

New York State Human Rights Law, N.Y. Exec. Law 290, et seq. ..................................... *passim*

## **INTRODUCTION**

Plaintiff Michael Wilson ("Plaintiff") is a Projectionist who was formerly employed by The New York and Presbyterian Hospital ("Hospital") from September 2014 until April 26, 2016, when his employment was terminated for his engaging in repeated disruptive and inappropriate behavior, including an altercation with a co-worker and demeaning and inappropriate conduct toward his female supervisor.   While Plaintiff admitted at his deposition that neither of his supervisors, Sandra Aldea and Alan Pine, nor anyone in Hospital management or Human Resources ever said anything to Plaintiff that was discriminatory or derogatory because of his gender (male), race (Caucasian), national origin (American), and age (then under 40), Plaintiff maintained this action asserting claims against the Hospital for gender, race, national origin, and age discrimination, hostile work environment and retaliation pursuant to the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, as well as for retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), N.Y. Lab. Law § 201-d.[1]  Plaintiff's testimonial admissions and the record evidence demonstrate that Plaintiff's claims are meritless and that he was not subject to unlawful discrimination, harassment or retaliation under any applicable law.

The undisputed facts in the record conclusively demonstrate that the Hospital did not discriminate against Plaintiff based on his race, gender, national origin, and age and he was not subjected to a hostile work environment by his supervisors, Pine and Aldea.   Both Pine and Aldea were aware of Plaintiff's gender and race when they interviewed him and, with knowledge that he was a Caucasian male, Aldea recommended he be hired and Pine made the decision to hire him.

---

[1] Plaintiff has voluntarily dismissed his FLSA and NYLL claims for unpaid overtime (Counts I and III) and his NYLL claims for failure to provide wage notices (Count IV).  (*See* Transcript of Pre-Motion Conference held on Oct. 24, 2018, at pp. 5-6, attached as Exhibit 1 to the Declaration of Adriana S. Kosovych, Esq. dated January 14, 2020).

In addition, Plaintiff has not identified any similarly-situated comparator who was treated more favorably after engaging in similar poor performance or misconduct.  Although Plaintiff wrote prolific e-mails to Human Resources about his supervisors, the record is devoid of even one written complaint alleging that Plaintiff was being discriminated against because of his gender, race, national origin, or age.

Plaintiff's FLSA retaliation claims are ripe for dismissal because Plaintiff admitted at his deposition that he never complained about his FLSA exemption status and there is no causal connection between any purported complaints and any adverse employment action.  In regard to Plaintiff's state law retaliation claims about Pine's and Aldea's alleged treatment of him, unsafe and unsanitary conditions or hostile environment, such complaints did not constitute "protected activity"; even if Plaintiff has established a *prima facie* retaliation case under state law, then such claims are preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq*.

In sum, and as set forth in detail below and in the Local Rule 56.1 Statement of Undisputed Material Facts, the record evidence demonstrates that the Hospital disciplined Plaintiff and terminated his employment for legitimate, non-discriminatory reasons having nothing to do with his gender, race, national origin, age or any purported protected activity. Plaintiff's discrimination, hostile work environment, and retaliation claims are wholly unsupported by the record evidence. Accordingly, the Complaint should be dismissed in its entirety on summary judgment.

## RELEVANT FACTS

### A.    The Parties

The Hospital is a New York not-for-profit corporation that provides state-of-the-art inpatient, ambulatory, and preventative care in all areas of medicine and, as one of the largest and most comprehensive healthcare institutions in the world, the Hospital is dedicated to excellence in patient care, research, education and community service. (56.1 ¶ 1). The Hospital's Media Services

department is mainly responsible for creating promotional or internal communications media for the Hospital, as well as media for training, development and recognition purposes. (56.1 ¶ 4).

Plaintiff was hired by the Hospital on or about September 2, 2014 to work as a Projectionist in the Media Services department. (56.1 ¶¶ 2, 3).  Throughout his employment, Plaintiff reported to Alan Pine, Director of Media Services, and Sandra Aldea, Manager of Media Services. (56.1 ¶¶ 23, 25, 27).[2]  Pine made the decision to hire Plaintiff after reviewing Plaintiff's qualifications and interviewing Plaintiff. (56.1 ¶ 31).  Aldea interviewed Plaintiff and recommended that he be hired. (56.1 ¶ 32).  Plaintiff worked with two Senior Projectionists in the Media Services Department, Robert Sean Stephens and Steve Harris, who together were referred to as the "video production team." (56.1 ¶¶ 33, 34).  At the time Plaintiff was hired, he was classified as an exempt employee, as were his two co-workers. (56.1 ¶¶ 117, 132).

### B.   The Hospital Maintained Strict Policies Prohibiting Discrimination, Harassment and Retaliation.

Throughout Plaintiff's employment, the Hospital maintained a zero tolerance policy against discrimination and harassment in the workplace as well as strict policies and procedures relating to equal employment opportunities, non-discrimination, and non-harassment. (56.1 ¶¶ 5, 6, 12-14).  The Hospital also maintained complaint procedures for employees to report incidents where an employee believes that he or she had been subjected to (or witnessed) any form of discrimination and/or harassment, as well as strict policies prohibiting retaliation against anyone for reporting discrimination and/or harassment. (56.1 ¶¶ 7, 8).  These policies were published in a variety of places, including the Hospital's Employee Handbook, and provided to every new hire and made available on the Hospital's "infonet." (56.1 ¶¶ 9, 10).  Plaintiff received and reviewed a

---

[2] Aldea was Plaintiff's direct supervisor; Aldea, in turn, reported to Pine. (56.1 ¶¶ 24, 28).  At the time Plaintiff was hired and began reporting to Aldea, she was the Coordinator of Media Services. (56.1 ¶ 26).  Aldea was promoted to Manager of Media Services on October 11, 2015. (56.1 ¶ 27).

copy of the Employee Handbook at the time he was hired. (56.1 ¶ 11).  The Hospital's Employee

Handbook and Human Resources Policy and Procedure Manual contain "Rules of Conduct" and a

"Discharge and Corrective Action" policy, with which all Hospital employees are required to

become familiar with and adhere to, as well as policy entitled "Disruptive Behavior/Behaviors that

Undermine a Culture of Quality, Safety and Compassionate Care". (56.1 ¶¶ 12, 13, 15, 16, 18-21).

### C.  Plaintiff's Job Duties As a Projectionist

The Media Services department receives requests for media-related services from Hospital

executives. (56.1 ¶ 77).  Each request is assigned as appropriate by Aldea to a projectionist, senior

projectionist or team of projectionists to carry out the assignment based on skill set and equitable

sharing of work. (56.1 ¶¶ 78, 80).  As a Projectionist, Plaintiff was responsible to perform pre-

production, production and post-production work, which included organizing and preparing gear

for videotaping events, setting up camera equipment, videotaping, securing and editing video

footage to produce final video product, as well as taking still photography, working on audio-

visual format presentations in the field, and formatting PowerPoint presentations. (56.1 ¶ 79).

The regularly scheduled work hours in the Media Services department are 9:00 a.m. to 5:00

p.m. (56.1 ¶ 93).  The Media Services department receives occasional requests to cover earlier or

later jobs and requests to film on a weekend. (56.1 ¶ 94).  Projectionists may have altered work

hours or may work additional time to cover these earlier or later jobs. (56.1 ¶ 95).  Employees in

the Media Services department, including Plaintiff, were able to view future assignments in

advance because Aldea entered assignments into the department calendar when she received them.

(56.1 ¶ 97). Plaintiff, like the other projectionists, had the opportunity to choose to work on

assignments that were scheduled in the evening or at night. (56.1 ¶ 96).[3]  Aldea advised Plaintiff

that if he saw a job on the calendar on an evening or weekend that he was available, he could

volunteer for the assignment. (56.1 ¶ 101).[4]

    **D.**    **Plaintiff Complains to HR About His Female Supervisor**

    On July 15, 2015, Plaintiff met for the first time with Eric Carr, Labor/Employee Relations

in the Human Resources Department regarding Aldea and his interactions with her, and claimed

that he was "getting in trouble" for asking about protocol for being asked to work overtime in the

evening. (56.1 ¶¶ 118, 119).  There was no discussion about overtime pay in the July 15 meeting

with Carr. (56.1 ¶ 120).  On August 7, 2015, Plaintiff thanked Carr in an e-mail and advised him

that his interactions with Aldea improved and that his job became more bearable. (56.1 ¶ 124).

    Thereafter, Plaintiff wrote countless e-mails and letters to Human Resources detailing his

complaints about purported unfair treatment and criticism of his work performance and conduct

by Pine and Aldea. (56.1 ¶ 230).[5]  The Hospital appropriately and extensively responded to all of

Plaintiff's letters and e-mails and went to great lengths to help him improve his work environment

and relationship with his supervisors. (56.1 ¶ 232).

    **E.**    **Plaintiff's Status Change from Exempt to Non-Exempt**

    On August 2, 2015, Plaintiff sent Carr an e-mail asking whether he was FLSA exempt, and

Carr responded stating that he would look into his question, for which Plaintiff thanked him. (56.1

---

[3] Projectionists are assigned overtime work only if they accept such assignments. (56.1 ¶¶ 98, 99).  Indeed, Plaintiff often was given the first right of refusal for overtime assignments that he was capable of handling.  (56.1 ¶ 100).

[4] Employees in the Media Services department occasionally used a van owned by a third-party consultant to travel to assignments. (56.1 ¶ 90).  The van is insured, and no employee has ever expressed concern about the safety of the van or brought up any unsafe conditions with the van. (56.1 ¶¶ 91, 92).

[5] Plaintiff also requested frequent meetings with Human Resources to discuss his complaints about his supervisors. (56.1 ¶ 231).  Members of Human Resources met with Plaintiff numerous times to address his complaints. (56.1 ¶ 233).

¶¶ 121, 122).  This was the first time Plaintiff raised a question regarding his status as an exempt employee. (56.1 ¶ 122).

On October 1, 2015, the Hospital changed the job classification of all the projectionists in the Media Services department from exempt to nonexempt effective October 1, 2015. (56.1 ¶¶ 125, 132).  The Hospital provided Plaintiff with written notice of his payroll status change and retroactively paid Plaintiff $6,466.61 for all overtime worked up to that date. (56.1 ¶¶ 126, 127).[6] As a result, there was no overtime Plaintiff worked for which he was not paid and he was paid in full for every overtime hour he worked. (56.1 ¶ 128). Plaintiff signed a written acknowledgment that the Hospital had paid him for all overtime worked and received and signed a Notice and Acknowledgement of Pay Rate and Payday. (56.1 ¶¶ 129, 130).  Plaintiff was "very pleased" with the Hospital's resolution of his inquiry about his FLSA status and he has no complaints about how HR or the Hospital responded to his inquiry about his status as an FLSA exempt employee or the change in his status to nonexempt. (56.1 ¶ 131).

### F.  Plaintiff's Frequent Requests for Time Off and Rejection of Overtime Assignments

Plaintiff never volunteered for overtime assignments that were available during the evening or on the weekend, and he often advised Aldea in advance that he would be unavailable to work on weekends in the event overtime assignments arose. (56.1 ¶¶ 102, 103, 107).[7]  He refused to work overtime on assignments that were outside of his regular scheduled work hours when such assignments were offered to him. (56.1 ¶¶ 104, 106, 110).  Although Aldea continued to offer Plaintiff the same number of opportunities to cover jobs scheduled in the evening or on the

---

[6] The Hospital also retroactively paid Stephens and Harris for all overtime they had worked up to that date. (56.1 ¶ 132).

[7] Plaintiff also frequently requested vacation time and to leave work early for personal commitments. (56.1 ¶ 105, 108, 109, 111-116).

weekend after his job classification changed to non-exempt, Plaintiff continued to reject overtime assignments and make frequent requests to leave work early and for time off.  (56.1 ¶¶ 133-137).

### G.   Plaintiff's Repeated Instances of Poor Performance and Misconduct Between 2014 and 2015

Throughout his employment at the Hospital, Plaintiff displayed numerous instances of poor work performance, inappropriate behavior and other misconduct, which were documented by Pine and Aldea and for which Plaintiff was counseled. (56.1 ¶¶ 138, 139, 142).  Specifically, Aldea noted deficiencies in Plaintiff's work performance, including that Plaintiff took longer to complete tasks than his colleagues, reacted negatively whenever she asked him about his work, at times becoming confrontational and aggressive towards Aldea. (56.1 ¶¶ 140, 141).  Aldea kept contemporaneous notes regarding instances of Plaintiff's performance deficiencies. (56.1 ¶ 142).

Among other issues, Plaintiff:  went against Aldea's express instructions and contacted his co-worker during his vacation regarding a work assignment (56.1 ¶¶ 143, 144); failed to report to either supervisor that he was delayed arriving at the office (56.1 ¶¶ 145-148); refused to complete an assigned job because had a personal appointment (56.1 ¶¶ 149-151); spoke to Aldea in a condescending manner in response to performance counseling (56.1 ¶ 152); disregarded Aldea's directives (56.1 ¶¶ 153-157).  Plaintiff's repeated refusals to follow his supervisor's instructions and to work in a cooperative manner with the team put a strain on his co-workers and interfered with the Media Services department's operations in servicing media-related requests. (56.1 ¶ 158).

### H.   Plaintiff's 2015 Performance Evaluation Addresses His Unprofessional and Disruptive Conduct

On March 3, 2016, Plaintiff received his 2015 performance evaluation for his work in 2014. (56.1 ¶ 163).[8]  In the section titled "NYP Culture," Plaintiff received a rating of "does not meet

---

[8] Aldea completed Plaintiff's 2015 performance evaluation and Pine reviewed it before it was finalized, agreeing with Aldea's ratings and comments. (56.1 ¶¶ 43, 44, 164, 165).  Plaintiff did not receive a performance evaluation in 2015

expectations" in 3 out of 5 categories, including: Respect, Teamwork, and Empathy. (56.1 ¶¶ 168-171). Plaintiff also received a rating of "does not meet expectations" in 3 out of 5 "Core Competencies" – Action Oriented, Integrity & Trust, and Peer Relationships. (56.1 ¶¶ 172-175). In her comments, Aldea explained the ratings and advised Plaintiff on how to improve. (56.1 ¶¶ 171, 176).

Despite these specific deficiencies, Aldea gave Plaintiff an overall rating of "meets expectations." (56.1 ¶ 177). Aldea wrote comments acknowledging Plaintiff's successes, and explaining the overall performance rating he received and her expectations. (56.1 ¶ 178). Plaintiff wrote a response to his 2015 performance evaluation expressing disagreement with his supervisors' evaluation of his performance. (56.1 ¶¶ 179, 180). Plaintiff did not state that he would try to meet his supervisors' criticisms or change his behavior. (56.1 ¶ 181).

## I. **Plaintiff's Poor Conduct and Disruptive Behavior Continues in 2016**

Plaintiff's performance did not improve in 2016. On February 17, 2016, Plaintiff once again failed to advise Aldea that he had scheduled a meeting and would be away from the office during work hours. (56.1 ¶ 159). Aldea verbally warned Plaintiff regarding his failure to notify her or Pine in advance if he needed to be away from the office during work hours. (56.1 ¶ 160). While Aldea was giving Plaintiff the verbal warning, Plaintiff became argumentative, reacted aggressively and negatively, and became loud and belligerent, causing Pine to intervene. (56.1 ¶ 161). On February 19, 2016, Plaintiff was issued a written warning for his unprofessional, disruptive and counter-productive conduct in response to the verbal warning and previous direct feedback on multiple occasions. (56.1 ¶ 162).

---

for his work in 2014 because he was a new employee who had only worked four months out of the review period. (56.1 ¶ 182).

On April 21, 2016, Aldea asked Plaintiff what he was working on and for an estimate of how long it would take to complete. (56.1 ¶ 183). In response, Plaintiff became angry and aggressive towards Aldea and challenged her for asking about his work. (56.1 ¶ 183). After Aldea asked Plaintiff to stop being aggressive towards her, Plaintiff followed Aldea into her office, continued challenging her for asking a question about his work, and made inappropriate comments to Aldea, including telling her that Stephens told him to 'be careful around Aldea because she is always on her period.'" (56.1 ¶ 184).[9] Plaintiff also caused a confrontation with Stephens and raised his voice in the Media Services office, and Aldea had to intervene. (56.1 ¶¶ 186, 187). Plaintiff then left the office abruptly and went to Human Resources, where he met with Chastity Cruz-Hamilton, Human Resource Business Partner, and complained about Stephens' conduct toward him. (56.1 ¶¶ 188, 189).

### J.    Termination of Plaintiff's Employment

Human Resources conducted an investigation into the events of April 21, which included interviews with Plaintiff, Stephens, Harris, Aldea, and Pine. (56.1 ¶ 189). The investigation substantiated that Plaintiff had engaged in disruptive behavior in violation of the Hospital's Discharge for Cause and Corrective Action policy and Disruptive Behavior/Behaviors policy. (56.1 ¶ 190).[10] Cruz-Hamilton consulted with Pine regarding the outcome of her investigation, as well as Plaintiff's prior history of corrective action and inappropriate behavior, and Pine recommended to Cruz-Hamilton that the Hospital terminate Plaintiff's employment, which the Human Resources Department supported. (56.1 ¶¶ 194, 195). As a result, on April 26, 2016, the

---

[9] Plaintiff testified that Stephens made the "period" comment in or around September 2014 and admitted that it was inappropriate to make that comment to Aldea in April 2016 in response to her criticism of his work performance. (56.1 ¶ 185).

[10] "[E]ngaging in disorderly conduct such as fighting [and] creating a disturbance" violates the Discharge and Corrective Action policy, and "behavior that unnecessarily creates a stressful environment and interferes with others' effective functioning" violates the Disruptive Behavior/Behaviors policy. (56.1 ¶¶ 19, 22).

Hospital terminated Plaintiff's employment for repeated unprofessional and disruptive conduct, including on April 21, 2016, and his history of poor performance and counter-productive behavior. (56.1 ¶¶ 192, 195).  Plaintiff was advised of his termination in a meeting with Pine and Cruz-Hamilton. (56.1 ¶ 196). Neither Pine nor Cruz-Hamilton considered Plaintiff's race, national origin, age, or gender or any of his purported protected activity or job reclassification in any way as part of the decision to terminate Plaintiff's employment, nor did Aldea consider Plaintiff's race, national origin, age, or gender or any of his purported protected activity or job reclassification in any decision regarding Plaintiff's employment. (56.1 ¶¶ 197-199).[11]

### K.      Plaintiff Wrote Self-Serving Notes and Letters In Aid of This Litigation

During his employment with the Hospital, Plaintiff wrote a journal of notes containing his own, self-serving account of incidents to aid this litigation. (56.1 ¶ 228).  Plaintiff neither disclosed nor provided the Hospital with a copy of his complete journal at any time prior to his commencement of his lawsuit against the Hospital. (56.1 ¶ 229).

## ARGUMENT

### POINT I

### SUMMARY JUDGMENT SHOULD BE GRANTED FOR THE HOSPITAL ON PLAINTIFF'S DISCRIMINATION CLAIM

Plaintiff's claim of discrimination is meritless as a matter of law.  Plaintiff claims that he was discriminated against, harassed and subjected to a hostile work environment because of his male gender, Caucasian race, American national origin and age based on his testimony not corroborated by any other person, to wit:  (i) Pine once referred to Aldea as a "dog"; (ii) Pine once

---

[11] On April 26, 2016, Aldea issued Stephens a verbal warning for engaging in disruptive behavior by arguing with Plaintiff on April 21, in violation of the Hospital's Discharge for Cause and Corrective Action policy.  Prior to April 21, 2016, Aldea had never observed or been made aware of Stephens raising his voice towards another employee. (56.1 ¶¶ 200, 201).

called him a "pariah" and "Fred and Barney," referring to a cartoon character; (iii) Aldea once said

he was "acting like a child" and called him a "paranoiac"; and (iv) Pine allegedly left urine on the

bathroom floor.

Discrimination claims brought under the NYSHRL are analyzed under the Supreme

Court's framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

*Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 251-52, 257 (E.D.N.Y. 2012), *aff'd*, 713

F.3d 163 (2d Cir. 2013).  Plaintiff possesses the initial burden to establish that:  (1) he is a member

of protected group, (2) he was qualified for his position, (3) he was the subject to an adverse

employment action, and (4) the adverse action occurred under circumstances giving rise to an

inference of unlawful discrimination.  *Sotomayor*, 862 F. Supp. 2d at 253, 257.  Only if Plaintiff

establishes a *prima facie* case does the burden then shift to the Hospital to articulate a legitimate,

nondiscriminatory reason for its action. *Id.* at 252.  Plaintiff must then show that the proffered

reason is pretextual and that the "[real] reason[]" for the adverse action was discrimination.  *Id.*

**A.**  **Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination**

Plaintiff cannot satisfy the third or fourth prongs of a *prima facie* case of discrimination on

any of the bases he asserts because, the alleged discriminatory acts do not constitute adverse

employment actions.  All of Pine's alleged remarks were facially neutral and were nothing more

than isolated, stray remarks that cannot give rise to an inference of unlawful discrimination.

1.  The Alleged Discriminatory Words Do Not Constitute Adverse Employment Actions

With the exception of his April 2016 termination, Plaintiff's alleged examples of

discriminatory acts do not satisfy the third element of a *prima facie* claim.  The Second Circuit

Court of Appeals has made clear that to qualify as an adverse action, the employer's action toward

the plaintiff must be "materially adverse [with respect to] the terms and conditions of employment"

and that "the action must be more than a mere inconvenience or an alteration of job [duties]." *Sethi*

*v. Narod*, 12 F. Supp. 3d 505, 523 (E.D.N.Y. 2014) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) and *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (internal quotation marks omitted)).  "Being mean or rude is not an adverse employment action as it is not a materially adverse change in the conditions of the employees' employment."  *Ray v. Weit*, No. 13-CV-6415, 2016 WL 1229056, at *5 (E.D.N.Y. Mar. 28, 2016), *aff'd in part*, *vacated in part, remanded,* 708 F. App'x 719 (2d Cir. 2017) (internal quotation marks omitted).

Even accepting *arguendo* Plaintiff's testimony, none of Plaintiff's allegations regarding his treatment by Aldea and Pine prior to the termination of his employment rise to the level of adverse employment actions because they did not affect Plaintiff's job duties or pay or result in any demotion or other adverse action.  Specifically, Plaintiff's allegation that Pine was leaving urine on the bathroom floor had nothing to do with Plaintiff's gender, race, national origin or sex, and had no effect on Plaintiff's job –Plaintiff testified that after he reported the urine issue to Aldea, Aldea told Plaintiff that he could use a different bathroom and never criticized Plaintiff for using the other bathroom. (56.1 ¶¶ 218, 219).  Further, there is no evidence anywhere in the record, including in Plaintiff's deposition testimony, showing that any comments by Pine and Aldea had anything to do with Plaintiff's gender, race, national origin or age.  Plaintiff's testimony about the alleged comment by Pine referring to Aldea as a "dog" was not corroborated by anyone else – and certainly was not directed at Plaintiff. (56.1 ¶ 220).  Similarly, the alleged comment that one of Plaintiff's co-workers was a "sex guy" was not about Plaintiff.[12]

---

[12] Further, Pine's and Aldea's alleged remarks that Plaintiff was "acting like a child" and "Fred and Barney" and other remarks were comments about his conduct, and not his age or any other protected status.

2.  Isolated Stray Remarks Cannot Give Rise To An Inference
of Unlawful Discrimination

Plaintiff cannot meet the fourth element of a *prima facie* discrimination claim because Plaintiff's recitation of the few comments Pine and Aldea allegedly made over the course of Plaintiff's approximately year and a half employment do not give rise to an inference of discrimination.  The Second Circuit has "long held that stray comments ... do not create an inference of discrimination." *Dixon v. Int'l Fed'n of Accountants*, No. 10-CV-1924, 416 F. App'x 107, 110 (2d Cir. Mar. 25, 2011) (summary order).  The record is absent of any other allegations or evidence of remarks or actions that even reference Plaintiff's gender, race, national origin, or age.  Indeed, **Plaintiff admitted that neither Aldea nor Pine ever said anything to Plaintiff that was discriminatory because of his race, national origin, age, sex, or gender**. (56.1 ¶¶ 46-49, 58-61).  Further, he **admitted that no manager, officer or executive of the Hospital or in the Hospital ever said anything derogatory to Plaintiff because of his age, race, national origin, sex or gender**. (56.1 ¶¶ 66-73).  These facts demonstrate that Plaintiff is unable to raise an inference of discrimination regarding his termination.  Accordingly, Plaintiff cannot establish the fourth element of a *prima facie* case of race, gender, national origin or age discrimination.

**B.    The Hospital Had Legitimate, Non-Discriminatory Reasons for Terminating Plaintiff, Which Were Not a Pretext For Unlawful Discrimination.**

Even assuming, *arguendo*, that Plaintiff has established a *prima facie* case of race, gender, national origin or age discrimination, the Hospital has met its burden to articulate legitimate, non-discriminatory reasons for its decision to terminate Plaintiff's employment.  The evidence shows that Pine's and Aldea's criticisms of his performance and conduct, including his February 19, 2016 written warning, were based solely on Plaintiff's inability to cooperate and work as part of a cohesive team with his colleagues, his refusal to follow Aldea's instructions, and his repeated disruptions to the operations in the Media Services department. (*See* 56.1 ¶¶ 138-162, 167-178,

13

183-192). Plaintiff's documented "profound inability to get along with [his] co-workers …

represents a legitimate, non-discriminatory reason" for the Hospital's decision to take disciplinary

action. *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985); *see Boata v. Pfizer, Inc.*, No. 10 Civ.

4390, 2013 WL 432585, at *5 (S.D.N.Y. Jan. 31, 2013) (employer's "evidence that [the plaintiff]

was unable to get along with others in his workplace" was a legitimate, non-discriminatory

explanation for the challenged employment action), *aff'd*, 554 F. App'x 73 (2d Cir. 2014) (footnote

and citations omitted).

Any disagreement that Plaintiff may assert in regard to Pine's and Aldea's observations

and critiques of his work performance and conduct is not enough to avoid summary judgment. *See*

*Pooniah Das v. Our Lady of Mercy Med. Ctr.*, No. 00-CV-2574, 2002 WL 826877, at *8-9

(S.D.N.Y. Apr. 30, 2002) ("[a]n employee's opinion that a performance review was unfair,

supported only by [his] own conclusory statements to that effect, cannot bootstrap her claims into

a … claim of discrimination.") (internal quotation marks and citations omitted). Plaintiff's

"subjective belief that he was not treated fairly is simply not enough to demonstrate pretext." *Silva*

*v. Peninsula Hotel*, 509 F. Supp. 2d 364, 386 (S.D.N.Y. 2007) (citations omitted). Further,

Plaintiff "has produced no evidence that [the Hospital] was using the pretense of [Plaintiff's] poor

performance to permit [it] to achieve a secret, discriminatory agenda" based on his gender, race,

national origin or age. *See Richards v. N.Y. City Dep't of Educ.*, No. 13-CV-16, 2015 WL

4164746, at *9 (S.D.N.Y. July 10, 2015); *see Ruiz v. County of Rockland*, 609 F.3d 486, 492 (2d

Cir. 2010).

The evidence demonstrates that Plaintiff admitted that he made an inappropriate comment

to his supervisor and that he engaged in an altercation with his co-worker. (56.1 ¶¶ 183-188).

Further, the Hospital investigated the events on April 21 and its investigation substantiated that

Plaintiff had engaged in disruptive behavior in violation of the Hospital's Discharge for Cause and Corrective Action policy and Disruptive Behavior/Behaviors policy. (56.1 ¶¶ 189-190).  Prior to April 21, 2016, Plaintiff had been counseled multiple times about deficiencies in his work performance, including in his 2015 performance evaluation, and received both a verbal and written warning in February 2016 for his continued disruptive, inappropriate and uncooperative conduct. (56.1 ¶¶ 159-162, 165-178, 191).  Neither Pine nor Cruz-Hamilton considered Plaintiff's race, national origin, age, or gender or his complaints about unfair treatment in any way as part of the decision to terminate Plaintiff's employment. (56.1 ¶¶ 197, 199; *see also* 56.1 ¶ 198).

Plaintiff cannot show that he was treated differently on account of his gender, race or age because Stephens, who is a male Caucasian, also received disciplinary action for his conduct on April 21, 2016. (56.1 ¶¶ 34, 195, 196). Plaintiff has not identified any similarly-situated comparator who was treated more favorably after engaging in similar poor performance or misconduct.  Further, both Pine and Aldea were aware of Plaintiff's gender and race at the time he was hired because they interviewed him; with this knowledge, Aldea recommended that Plaintiff be hired and Pine made the decision to hire Plaintiff. (56.1 ¶¶ 31, 32).  Pine is a Caucasian male. (56.1 ¶ 35).  These facts undercut any claim that either Pine or Aldea acted with discriminatory animus based upon Plaintiff's gender or race.  *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) ("when the person who made the decision to fire was the same person who made the decision to hire it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire").

In light of Plaintiff's failure to establish a *prima facie* case of gender, race, national origin and age discrimination, and failure to show that the Hospital's legitimate, non-discriminatory

reasons for its actions were false and a pretext for discrimination, summary judgment should be granted dismissing Plaintiff's discrimination claims.

**POINT II**

**SUMMARY JUDGMENT SHOULD BE
GRANTED FOR THE HOSPITAL ON PLAINTIFF'S
HOSTILE WORK ENVIRONMENT CLAIMS**

Plaintiff's claim that he was sexually harassed and subjected to a hostile work environment because (i) Pine and Aldea engaged in an inappropriate romantic and/or sexual relationship during work hours and on Hospital premises, (ii) Pine once referred to Aldea as a "dog", (iii) Pine once called Plaintiff's co-worker a "sex guy", and (iv) a co-worker once told Plaintiff that Aldea was "always on [her period]" (Compl. ¶¶ 44, 46, 50, 154-156), is not supported by a scintilla of evidence. Plaintiff cannot sustain his hostile work environment claim.

To establish a NYSHRL "claim predicated on the existence of a hostile work environment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'".[13] *Ifill v. United Parcel Serv.*, No. 04-CV-5963, 2008 WL 2796599, at *10 (S.D.N.Y. July 17, 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Hernandez v. Kaisman*, 103 A.D.3d 106 (1st Dep't 2012) (same). "The environment must be both subjectively and objectively hostile and abusive." *Ifill*, 2008 WL 2796599, at *10; *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311 (2004). "Isolated instances of harassment ordinarily do not rise to the necessary level; [instead,] the employee must demonstrate either that a single incident was extraordinarily severe, or that a series

---

[13] *Russo v. New York & Presbyterian Hosp.*, 972 F. Supp. 2d 429, 450-51 (E.D.N.Y. 2013) ("NYSHRL hostile work environment claims are analyzed under the same standard as Title VII hostile work environment claims.") (citation omitted).

16

of incidents was sufficiently continuous and concerted, to have altered the conditions of his or her working environment." *Ifill*, 2008 WL 2796599, at *10.

Plaintiff cannot satisfy his burden. **Plaintiff admitted that nobody at the Hospital created a hostile work environment because of his sex, race or age.** (56.1 ¶¶ 74-76). The record is devoid of any evidence that could support a claim of national origin-based hostile work environment – and the Complaint contains no such allegations.

No evidence supports Plaintiff's speculation that Pine and Aldea were engaged in a sexual relationship. Plaintiff admitted he has no direct personal knowledge, and never saw any acts indicating, that Pine and Aldea were engaged in a sexual or personal relationship. (56.1 ¶ 207). Plaintiff never saw Pine and Aldea: touching each other inappropriately; engaged in sexual activity; on a date; or engage in an inappropriate sexual relationship during business hours. (56.1 ¶¶ 208-211). To the contrary, the evidence shows: Pine never engaged in sexual relationships at work and never had sexual intercourse in his office; Pine and Aldea never socialized alone; Aldea and Pine never engaged in a sexual relationship; and Pine never bragged to other employees that he was in a sexual relationship with Aldea. (56.1 ¶¶ 202-205).

The alleged comments upon which Plaintiff relies are insufficient to support a *prima facie* hostile work environment claim because they were not based on Plaintiff's gender, race, national origin, or age. As stated above, Pine's alleged "dog" remark, his alleged remark about Plaintiff's co-worker, and the co-worker's alleged remark about Aldea had nothing to do with Plaintiff's sex or any other protected status.[14]  *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 513-519

---

[14] Plaintiff's allegations are further undermined by the fact that Aldea, who was the subject of Pine's and the co-worker's alleged remarks, has never felt that she was sexually harassed while working at the Hospital. (56.1 ¶ 206). Aldea never witnessed employees in the Media Services office discuss inappropriate sexual innuendo, and she never made aware of any sexual misconduct by Harris or Stephens. (56.1 ¶¶ 52, 56). Indeed, Aldea was never made aware of any inappropriate sexual comments made by Pine or of any sexual misconduct by either Harris or Stephens. (56.1 ¶¶ 54-56). Pine has never mentioned to Aldea about any employee needing to go to anonymous sex meetings or talked

(S.D.N.Y. 2010) (dismissing hostile work environment claim because male plaintiff's complaints about sexual harassment of women "[did] not make [plaintiff] himself a victim of gender-based discrimination" and the "hostility toward [him] was grounded in workplace dynamics unrelated to [his] sex").  Even if they did, the alleged comments are nothing more than isolated remarks and the conduct alleged is not sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.  *Harris*, 510 U.S. at 21.  Plaintiff continued to work in the Media Services department alongside the other two projectionists and in the same office as Pine and Aldea.  Since there is no evidence that Plaintiff was harassed or that any harassment severely or pervasively altered the conditions of his work environment at the Hospital, his hostile work environment claim must be dismissed.

## POINT III

### SUMMARY JUDGMENT SHOULD BE GRANTED FOR THE HOSPITAL ON PLAINTIFF'S RETALIATION CLAIMS

Plaintiff cannot succeed on any of his retaliation claims because he cannot establish a *prima facie* case of retaliation or show that the Hospital's basis for disciplining him and terminating his employment was a pretext for retaliation.

Retaliation claims under the FLSA, NYSHRL and NYLL are evaluated under the same burden-shifting analysis as his discrimination claims.  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); *see Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *Quintanilla v. Suffolk Paving Corp.*, 09-CV-5331, 2019 WL 885933, at *19 (E.D.N.Y. Feb. 22, 2019).  Specifically, Plaintiff must initially establish a *prima facie* case by demonstrating:  (1) participation in a protected activity of which the defendant was aware, (2) an adverse employment action, and (3) a

---

about sex as it relates to Stephens, and Pine never called Harris a "sex guy." (56.1 ¶¶ 53, 57).  Further, Pine has never been involved in or the subject of any investigation for alleged sexual harassment. (56.1 ¶ 64).

causal connection between the protected activity and the adverse employment action. If he meets this burden, the Hospital must "articulate [some] legitimate, non-retaliatory reason for the employment action," such that the adverse action would not have occurred in the absence of a retaliatory motive. *Hicks*, 593 F.3d at 164; *Mullins*, 626 F.3d at 53; *Quintanilla*, 2019 WL 885933, at \*19; *see Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

### A.    Plaintiff Cannot Establish His *Prima Facie* Retaliation Claims Under the FLSA, NYLL, or NYSHRL

Plaintiff claims that the Hospital retaliated against him because he complained about his FLSA exemption status, raised complaints about unsanitized equipment in the OR and other unsafe working conditions, and complained about unfair treatment by his supervisors. Plaintiff cannot establish any of his retaliation claims.

#### 1.    Plaintiff Cannot Establish Any of the Elements of a *Prima Facie* Retaliation Claim Under the FLSA

Plaintiff's FLSA retaliation claim is not viable for several reasons. First, he did not engage in protected activity, as his discussions with Human Resources about his payroll status do not constitute a complaint under the statute. *See Watkins v. First Student, Inc.*, No. 17-CV-1519, 2018 WL 1135480 at \*10 (S.D.N.Y. Feb. 18, 2018) (no protected activity where the plaintiff "informed [manager] that she "'noticed [her] overtime hours were not being paid properly,… [and] being paid at many different rates of pay" because the plaintiff provided no "basis … to infer that she was claiming an FLSA or NYLL violation, as opposed to expressing that she did not understand her overtime pay"). Plaintiff admitted that he did not complain about his job classification, and instead, simply asked a question regarding his exemption status. (56.1 ¶¶ 120-122). Second, Plaintiff did not suffer any adverse employment action in the terms and conditions of his employment. After Plaintiff raised the inquiry regarding his job classification, the Hospital reclassified Plaintiff's job from exempt to non-exempt and paid Plaintiff for all overtime work he

had performed through October 1, 2015, the date of his job reclassification, which Plaintiff acknowledged. (56.1 ¶¶ 125-130). Plaintiff was "very pleased" with the Hospital's resolution of his inquiry about his FLSA status and he has no complaints about how HR or the Hospital responded to his inquiry about his status as an FLSA exempt employee or the change in his status to nonexempt. (56.1 ¶ 131).

After Plaintiff's job classification changed, he was offered the same number of opportunities to cover jobs scheduled in the evening or on the weekend; he continued to make frequent requests to leave work early and for time off and he continued to reject overtime assignments, including on December 17, 2015 and January 12, 2016. (56.1 ¶¶ 133-137). Plaintiff's complaints about purportedly not receiving overtime assignments are negated by his consistent refusal of such assignments, as well as his repeated requests for time off from work. Although Plaintiff claims the alleged harassment increased after his job was reclassified, Plaintiff was unable to articulate any facts showing an increase in the alleged harassment, and simply repeated the same remarks and criticisms by his supervisors, which do not constitute adverse actions.

Further, there is no evidence of a causal connection between Plaintiff's inquiry about his payroll status and job reclassification and any purported retaliatory acts or his termination. Plaintiff raised his inquiry about his job classification in August 2015 and the Hospital reclassified his position in October 2015. (56.1 ¶¶ 121, 125). Plaintiff did not receive his verbal and written warnings until February 2016 and his employment ended in April 2016. (56.1 ¶¶ 160, 162, 195). Courts have long held that gaps in time much shorter than six months are insufficient to establish a causal connection. *See, e.g., Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 296 (E.D.N.Y. 2010) ("two months between the protected activity and the adverse employment action does not allow for an inference of causation") (quoting *Garrett v. Garden City Hotel, Inc.*, No. 05-CV-962,

2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (a two and one-half month interval between the plaintiff's most recent complaint and discharge was too long to make a *prima facie* of retaliation, and collecting cases)).

2.     Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation Under the NYLL

Plaintiff's NYLL retaliation claim similarly fails. First, Plaintiff's claims that he complained on behalf of his two co-workers about FLSA exemption status, overtime and unfair treatment are belied by the record. Plaintiff's testimony and the record evidence makes clear that Plaintiff's August 2, 2015 inquiry was about his own FLSA exemption status, and not about the status of his co-workers, and there is no evidence showing any complaint by Plaintiff regarding his co-workers working, or being denied, overtime assignments or being otherwise subjected to any unfair treatment or unsafe conditions. To the contrary, Plaintiff admitted that he never made any report or complaint to any manager or supervisor at the Hospital about equipment not being sanitized before being set up inside an operating room to film a surgery. (56.1 ¶ 88).[15] The record contains no evidence of any other alleged "protected concerted activity" by Plaintiff. Second, Plaintiff did not suffer any adverse action based on his purported complaints about unsanitized equipment and unsafe working conditions.[16]

Plaintiff also cannot establish any causal connection, as he admitted that he was never threatened or criticized for trying to get clarification on protocol. (56.1 ¶ 89). Further, the first and only time Plaintiff was involved in a surgery shoot assignment (where he did not enter the

---

[15] Indeed, Plaintiff had no basis to complain about unsanitary equipment – he admitted he does not know of any requirement that filming gear be sanitized in order to be used in an operating room and that he has no training in sanitizing equipment to be used in a hospital. (56.1 ¶¶ 86-87).

[16] To the extent Plaintiff claims he was not offered the opportunity to cover an OR shoot, the undisputed material facts defeat his claims. The Media Services department receives requests to film in the OR very rarely, approximately once or twice per year, and Plaintiff was not qualified to film in the OR. (56.1 ¶¶ 81, 84, 85).

operating room) was in late 2014; his employment was not terminated until April 2016. (56.1 ¶¶ 82, 83, 195).  Again, such an extended period of time between the alleged protected activity and adverse action is too long to establish the requisite causal connection for a retaliation claim. *Vinokur*, 701 F. Supp. 2d at 296; *Garrett*, 2007 WL 1174891, at *21.

### 3.   Plaintiff Cannot Establish His *Prima Facie* NYSHRL Retaliation Claims

Plaintiff's retaliation claim under the NYSHRL fails because he cannot establish that any of his complaints constituted protected activity within the meaning of the NYSHRL.  None of Plaintiff's letters or e-mails to Human Resources include any allegation that his gender, race, national origin or age was the motive for the actions of Pine and Aldea.  "Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) (plaintiff's "continual repetition of the words 'discrimination' and 'harassment'" did not constitute protected activity "[b]ecause there is no indication that [plaintiff] believed that her sex had anything to do with her treatment…"); *Krasner*, 680 F. Supp. 2d at 521 (plaintiff's "concern in lodging the complaint [was] expressly articulated not as a protest against gender-based discrimination, but as an effort to stop [his supervisor] from mistreating him").[17]

Since there is no evidence of any complaints by Plaintiff regarding discriminatory behavior, Plaintiff cannot show that he engaged in protected activity, an element necessary to

---

[17] Moreover, "[t]o the extent that an employee complains about perceived 'unfair' treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to his protected status, he fails to establish that he was engaged in protected activity." *Bakeer v. Nippon Cargo Airlines, Co.*, No. 09-CV-3374, 2011 WL 3625103, at *38 (July 25, 2011), *report and rec. adopted*, 2011 WL 3625083 (E.D.N.Y. Aug. 12, 2011).

establish a *prima facie* case of retaliation.  *See, e.g.*, *Krasner*, 680 F. Supp. 2d at 521 (dismissing retaliation claim where plaintiff's "eight-page written complaint to the human resources department … [did] not express any concern over gender-based discrimination" and "simply recount[ed] various ways in which he believed [his supervisor] was 'bullying him' … and favoring [a co-worker] over him"); *Szarzynsky v. Roche Labs., Inc.*, 07-CV-6008, 2010 WL 811445, at *12 (W.D.N.Y. Mar. 1, 2010) (dismissing retaliation claim where plaintiff's letter to HR did not reference his age or alleged discrimination claim and thus, did not constitute protected activity).

Second, Plaintiff did not suffer any adverse employment action during his employment with the Hospital.  Again, other than the October 2015 reclassification of Plaintiff's job, there is no evidence that the Hospital altered his pay, job duties or responsibilities, or otherwise altered the terms and conditions of Plaintiff's employment.  Additionally, Plaintiff was fired after months of inappropriate, disruptive behavior and his unwavering refusal to effectively interact with his supervisors. (56.1 ¶¶ 138-162, 167-178, 183-192).  The anti-discrimination laws are not intended to immunize insubordinate, disruptive, or unproductive behavior at work.

### B. The Hospital Has Met Its Burden By Setting Forth Its Reasons for Terminating Plaintiff's Employment, Which Are Not Pretextual

Even if Plaintiff had established a *prima facie* retaliation case under any statute alleged, the Hospital has met its burden to articulate a legitimate, non-retaliatory reason for terminating Plaintiff's employment because its decisions were based solely on his continuing disruptive behavior and inappropriate conduct towards his supervisors, which violated Hospital policy and culminated in an altercation with his co-worker. (56.1 ¶¶ 138-162, 167-178, 183-192).

Plaintiff cannot meet his burden to show that these reasons were pretextual.  The evidence demonstrates that the sole basis for the Hospital's decisions to discipline Plaintiff and terminate his employment was his poor performance and disruptive and inappropriate conduct, and not on

his job reclassification or any purported protected activity in which he claims to have engaged. (56.1 ¶¶ 138-162, 167-178, 183-192, 197-199). Further, the Hospital appropriately and extensively responded to all of Plaintiff's letters and e-mails and Human Resources met with Plaintiff numerous times to address his complaints; neither Pine nor Aldea ever prevented Plaintiff from meeting with Human Resources or disciplined him for doing so. (56.1 ¶¶ 215, 217, 218, 230-233). Both Senior Projectionists whose positions were also reclassified remained employed thereafter, until one of them retired in October 2019. (56.1 ¶¶ 129, 234).[18]

In light of Plaintiff's inability to establish a *prima facie* case of retaliation and his inability to show that the written warning or termination of his employment would not have occurred in the absence of a retaliatory motive (*Univ. of Texas Southwestern Med. Ctr.*, 570 U.S. at 360), summary judgment dismissal of Plaintiff's retaliation claims should be granted.

**C.    Plaintiff's State Law Retaliation Claims Are Preempted By The NLRA**

Plaintiff's retaliation claims under the NYLL § 201-d and the NYSHRL are preempted because the claim of retaliation due to "protected activity" may constitute an unfair labor practice under the NLRA.  Section 7 of the NLRA sets forth the right of employees to engage in "concerted protected activity."  29 U.S.C. § 157.  "Concerted protected activity" means that an employee's action be taken "for the purposes of collective bargaining or other mutual aid or protection[.]"  *See* 29 U.S.C. § 157; *see also NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822, 830 (1984) ("The term 'concerted activit[y]' is not defined in the Act but it clearly enough embraces the activities of employees who have joined together in order to achieve common goals").  Section 8 makes it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the

---

[18] Plaintiff's FLSA retaliation claim is further undermined by Plaintiff's admission that Pine never said anything derogatory to Plaintiff about his reclassification as a nonexempt employee. (56.1 ¶ 216).  Neither Pine nor Aldea ever took any action against Plaintiff because of his reclassification. (56.1 ¶ 216).

exercise" of their Section 7 rights.  29 U.S.C § 158(a)(1).  "[W]hen an activity is arguably subject to § 7 or § 8 of the NLRA, the States as well as the Federal courts must defer to the exclusive competence of the National Labor Relations Board."  *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 89 (2d Cir. 2010) (internal quotations and alternations omitted).

To the extent Plaintiff has shown that he engaged in "protected concerted activity" by raising complaints about unsafe and unsanitary working conditions, denial of overtime assignments, and hostile environment, such claims are preempted.  *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244-45 (1959); *c.f. Domnister*, 607 F.3d at 89 ("In order to fall under Section 8 of the NLRA, plaintiffs must be alleging that they were retaliated against on the basis of having engaged in 'concerted protected activity.'").  Plaintiff concedes that his claims fall within the ambit of the NLRA.  (Compl., p. 9).  For this additional reason, Plaintiff's state law retaliation claims must be dismissed.

## CONCLUSION

Based on the foregoing, the Hospital respectfully requests that the Court grant its motion for summary judgment and dismiss the Complaint with prejudice, and award attorneys' fees and costs incurred in making this motion and any other relief the Court deems just and proper.

Dated: New York, New York
          January 15, 2020

                    EPSTEIN BECKER & GREEN, P.C.

                    By: ____*/s/ James S. Frank*_____
                              James S. Frank
                              Adriana S. Kosovych
                    875 Third Avenue
                    New York, New York 10022
                    Tel: (212) 351-4500
                    Fax: (212) 878-8600
                    *Attorneys for Defendant*