UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MICHAEL WILSON,

        Plaintiff,

  - against -

NEW YORK AND PRESBYTERIAN HOSPITAL
d/b/a NEW YORK-PRESBYTERIAN HOSPITAL,

        Defendant.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-5012 (RRM) (CLP)

ROSLYNN R. MAUSKOPF, United States District Judge.

On June 22, 2021, this Court issued a Memorandum and Order, (the "Prior M&O" (Doc. No. 59)), granting defendant's motion for summary judgment as to Counts II and V–VII of the complaint and recommitting the case to Magistrate Judge Pollack for all remaining pre-trial matters. Defendant now brings a motion to correct the Prior M&O, noting that Wilson orally withdrew all remaining claims at a status conference on October 24, 2019, and requests that the Court enter final judgment pursuant to Fed. R. Civ. P. 58. (Letter Motion to Correct (Doc. No. 60).) Wilson opposes this motion and cross-moves for reconsideration pursuant to either Fed. R. Civ. P. 54(b), 59(e), or 60(b). For the reasons set forth below, defendant's motion is granted and Wilson's motion is denied.

## BACKGROUND

Although familiarity with the facts and procedural history of this case is assumed, the Court will briefly recap the relevant background in this case.

<u>Factual Background</u>

Michael Wilson was hired on or about September 2, 2014, to work as a Projectionist in defendant's Media Services Department. (Defendant's 56.1 Statement of Undisputed Material

Facts ("Def.'s SOF") (Doc. No. 46) ¶¶ 1–3; Plaintiff's 56.1 Counterstatement of Material Facts ("Pl.'s SOF") (Doc. No. 52) ¶¶ 1–3.)  Wilson reported to Alan Pine, the Director of Media Services, and Sandra Aldea.  (Def.'s SOF ¶¶ 23, 25; Pl.'s SOF ¶¶ 23, 25.)   At the time Wilson was hired by defendant, he was classified as an exempt employee under the FLSA.  (Def.'s SOF ¶ 117; Pl.'s SOF ¶ 117.)

On August 2, 2015, Wilson emailed Eric Carr, an employee in the Human Resources department, to ask whether Wilson was FLSA exempt.  (Def.'s SOF ¶ 121; Pl.'s SOF ¶ 121.)  On October 1, 2015, defendant changed Wilson's job classification from exempt to non-exempt, effective immediately, and retroactively paid Wilson for all overtime worked; the classifications for all other Projectionists in Wilson's department were also changed effective October 1, 2015, and they, too, were retroactively compensated for overtime worked.  (Def.'s SOF ¶¶ 125–30; Pl.'s SOF ¶¶ 125–30.)

It is undisputed that after Wilson's job classification changed to non-exempt, he continued to be offered opportunities to cover jobs scheduled in the evening or on the weekend. (Def.'s SOF ¶ 133; Pl.'s SOF ¶ 133.)  It is also undisputed that after Wilson's job reclassification changed on October 1, 2015, he continued to make frequent requests to leave work early and for time off and continued to turn down off-hours assignments.  (Def.'s SOF ¶ 135; Pl.'s SOF ¶ 135.)  Nevertheless, Wilson testified at his deposition that "after the exemption changed suddenly," his coworkers continued "to work all the nighttime gigs and get paid overtime … for all that work, but I was never again put on any of those gigs… I was not allowed to, at that point, get any overtime work."  (Kosovych Declaration Exhibit 2 (Doc. No. 50-2) at 44, 46.)

In the months following Wilson's reclassification, Aldea and Pine admonished Wilson for various infractions.  On August 3, 2015, Pine emailed Wilson to remind him that he should

not arrive late to the office or be absent from work without informing his supervisors, and he should not disrupt a coworker's vacation to ask him a question about work. (Def.'s SOF ¶ 148; Pl.'s SOF ¶ 148.) Aldea also criticized Wilson for refusing to complete a job because it would require him to stay for an extra ten minutes, (Def.'s SOF ¶¶ 149–51; Pl.'s SOF ¶¶ 149–51), and disregarding her instructions, ((Def.'s SOF ¶¶ 152–57; Pl.'s SOF ¶ 152–57). Wilson received a written warning on February 19, 2016, for unprofessional and disruptive conduct, after an argument with Aldea and Pine regarding absence from work to attend a scheduled meeting. (Def.'s SOF ¶ 162; Pl.'s SOF ¶ 162.) In March 2016, Wilson received a performance evaluation for the 2015 year that was critical of his behavior towards his supervisors and coworkers and stated that he took longer than appropriate to complete tasks; nevertheless, his overall performance rating stated that Wilson "meets expectations." (Def.'s SOF ¶¶ 130, 163–78; Pl.'s SOF ¶¶ 130, 163–78.)

On April 21, 2016, Wilson and Aldea were involved in a verbal altercation after Aldea asked Wilson what he was working on and for an estimate of how long it would take to complete. (Def.'s SOF ¶ 183; Pl.'s SOF ¶ 183.) During that argument, Wilson repeated a sexist comment a coworker had allegedly made about Aldea. (Def.'s SOF ¶ 184; Pl.'s SOF ¶ 184.) Following an investigation into the altercation, Chastity Cruz-Hamilton, then Labor Relations Manager, found that Wilson had engaged in disruptive behavior in violation of defendant's Discharge for Cause and Corrective Action Policy and Disruptive Behavior/Behaviors Policy. (Def.'s SOF ¶ 191; Pl.'s SOF ¶ 191.) Cruz-Hamilton consulted with Pine about these findings, and Pine recommended that Wilson's employment be terminated; on April 26, 2016, Pine and Cruz-Hamilton informed Wilson that his employment was terminated effective that same day. (Def.'s SOF ¶¶ 194–96; Pl.'s SOF ¶¶ 194–96.)

Procedural History

      Wilson initiated the instant action on August 4, 2017, bringing eight claims. (Compl. (Doc. No. 1).) Among those claims were three claims for unpaid wages or wage notice violations, brought under the FLSA and the NYLL. At a telephonic pre-motion conference on October 24, 2019, Wilson orally withdrew those claims. (*See* Kosovych Declaration, Exhibit 1 – Transcript of October 24, 2019, Pre-Motion Conference (Doc. No. 50-1).)

      On August 17, 2020, Defendant filed a motion for summary judgment on all remaining claims. (Mot. (Doc. No. 45).) The Court granted the motion in its entirety on June 22, 2021, but nonetheless recommitted the case to Magistrate Judge Pollak for all remaining pre-trial matters in the mistaken belief that some causes of action remained unresolved. (Prior M&O (Doc. No. 59).) On July 6, 2021, fourteen days after the M&O was filed, defendant moved to correct the Prior M&O, arguing that because Wilson had orally withdrawn three of his claims and the Court had granted summary judgment on the remaining claims, that an order correcting the Prior M&O and directing judgment in favor of defendant was proper under Rule 58 of the Federal Rules of Civil Procedure. (Letter Motion to Amend/Correct/Supplement Order on Motion for Summary Judgment ("Mot. to Amend") (Doc. No. 60).)

      On July 8, 2021, Wilson filed a letter in opposition to defendant's motion, arguing that the Court had clearly not intended to enter judgment, and to do so now would be "highly prejudicial." (Pl.'s Opp. to Mot. to Amend (Doc. No. 61) at 1.) Wilson further requested that this Court "reconsider its dismissal of Counts II, V, VI, and VII pursuant to Fed. R. Civ. P. §§ 54(b), 59(e) or 60(b)." (*Id.*) In support of this motion for reconsideration, Wilson argues that the Court "engaged in vital oversights." (*Id.* at 2.) First, he argues that the Court was incorrect in concluding that Wilson's deposition testimony and affidavit were contradictory. (*Id.*) Second,

4

he asserts that the Court erred in concluding that Wilson's hostile work environment claim could not survive summary judgment because Wilson had failed to show that the harassment alleged related to his membership in a protected class, arguing that Wilson had alleged a hostile work environment "in violation of New York Executive Law § 296(e), not § 296(a)." (*Id.* at 2.) Third, Wilson argues that the Court erred in finding that Wilson had not alleged an adverse employment action sufficient to support a claim of retaliation under the FLSA, and failed to apply the definition of adverse employment action set forth in *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Fourth, Wilson argues that his Local Rule 56.1 Counter-Statement of Disputed Facts, (Doc. No. 52), included "119 disputed genuine and material facts with specific attribution of each fact to the record," which the Court failed to consider. (*Id.* at 3.) Accordingly, Wilson requests that the Court deny defendant's motion and "clarify and/or reconsider its dismissal of Counts II, V, VI, and VII." (*Id.*)

Defendant subsequently filed a letter opposing Wilson's motion for reconsideration as both untimely and meritless. (Opp. to Cross-Mot. for Reconsideration (Doc. No. 62).) As to timeliness, Defendant points to Local Rule 6.3, which requires that a motion for reconsideration be served "within fourteen (14) days after the entry of the Court's determination on the original motion." (*Id.* at 1 (quoting Local Rule 6.3).) Wilson filed his motion sixteen days after the Prior M&O was issued and failed to provide any explanation for his delay, so defendant argues that his motion must be dismissed as untimely. (*Id.*) Defendant also argues that Wilson cannot bring his motion under either Rule 59(e) or Rule 60(b), because no judgment has been entered. (*Id.*) Finally, defendant asserts that Wilson's arguments merely repeat arguments already considered and rejected by this Court in the Prior M&O, and so reconsideration is not warranted. (*Id.*)

5

Wilson responded in a letter reiterating that his cross-motion seeks "clarification initially, and, in the alternative, reconsideration," which, he argues, exempts him from the time limits set in Local Rule 6.3 as he is primarily bringing a motion for the revision of a nonfinal judgment under Rule 54(b). (Reply in Support of Cross-Mot. for Reconsideration (Doc. No. 63) at 1.) Additionally, Wilson argues that the Court clearly did not intend to enter judgment and dismiss all of his claims because it did not do so; he contends that to amend the M&O and enter judgment would be "the result of clear error and would result in manifest injustice." (*Id*. at 1–2.) Finally, Wilson reiterates that the Court erred when it "overlooked or misinterpreted disputed facts" in its analysis of Wilson's deposition testimony and affidavit. (*Id*. at 2.)

## DISCUSSION

### I.  Wilson's Motion for Reconsideration

Motions for reconsideration may be brought pursuant to Rules 54(b), 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3. Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Butto v. Collecto Inc.*, 845 F. Supp. 2d 491, 494 (E.D.N.Y. 2012) (quoting *Trans-Pro Logistic Inc. v. Coby Electronics Corp.*, No. 05-CV-1759 (CLP), 2010 WL 4065603, at *1 (E.D.N.Y. Oct. 15, 2010) (internal quotation marks and citation omitted)). Under Rule 59(e) and Local Rule 6.3, "[a] motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision." *In re N.Y. Cmty. Bancorp, Inc., Secs. Litig.*, 244 F.R.D. 156, 159 (E.D.N.Y. 2007); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Similarly, Rule 60(b) provides relief from a judgment for, among other things, mistakes, inadvertence, excusable neglect, newly discovered

6

evidence, and fraud. Fed. R. Civ. P. 60(b). Rule 60(b) provides "extraordinary judicial relief" that may "only be granted upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). "The decision whether to grant a party's Rule 60(b) motion is committed to the sound discretion of the district court." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation marks omitted).

"When considering a motion for reconsideration under Rule 54(b), '[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Vicuna v. O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419, 433 (E.D.N.Y. 2017) (quoting *DiLaura v. Power Authority of NY*, 982 F.2d 73, 76 (2d Cir. 1992)). Again, reconsideration under Rule 54(b) is discretionary, and subject to the caveat "that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964).

Defendant first challenges Wilson's motion for reconsideration on procedural grounds. Under Local Rule 6.3, motions for reconsideration must be brought within fourteen days after the Court's entry of decision on the original motion. Local Rule 6.3; *see also Geo-Group Communs. v. Shah,* 2020 U.S. Dist. LEXIS 176726, at *28 (S.D.N.Y. Sep. 25, 2020) (stating that Local Rule 6.3 applies to Rule 54(b) in addition to Rules 59(e) and 60(b) and collecting cases). Defendant correctly states that Wilson's cross-motion, filed two days past this deadline and providing no explanation for the delay, is time-barred under Local Rule 6.3. Accordingly, Wilson's motion for reconsideration must be denied for this reason alone.

In addition, Wilson's motion fails on the merits because has failed to satisfy the demanding standard required for reconsideration under any of the three Federal Rules he cites.

7

Wilson's arguments primarily rehash the arguments already considered and rejected by this Court in the Prior M&O, an inappropriate use of a reconsideration motion that this Court will not countenance.  In addition, Wilson also argues that the Court made several clear errors.  The Court will now address these arguments in turn.

### a. Disputed Facts

Wilson first asserts that the Court committed clear error when it inappropriately disregarded several material disputed facts contained in his Local Rule 56.1 Counter-Statement of Material Facts.  This Court has reviewed its determination regarding Wilson's Counter-Statement of Material Facts and finds that it was not error.  As the Court explained in footnote 1, on pages 1–2 of the Prior M&O, Wilson submitted a Counter-Statement of Material Facts that improperly interjected arguments or irrelevant facts in response to facts put forth by defendant, without specifically controverting defendant's factual assertions.  "Rule 56.1 statements are not argument."  *Rodriguez v. Schneider*, No. 95-CV-4083 (RPP), 1999 WL 459813, at *1 (S.D.N.Y. June 29, 1999), *aff'd*, 56 F. App'x 27 (2d Cir. 2003).  Further, "[i]f the opposing party ... fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."  *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).  Wilson's submission was an inappropriate use of the Rule 56.1 statement of material facts, and the Court determined that all facts would be deemed admitted unless specifically controverted.  Wilson provides no authority to suggest that this determination was error and the Court finds that it was not.

### b. Unsupported Assertions and Contradictory Testimony

Wilson next argues that the Court committed error when it found that Wilson's affidavit and deposition testimony contradicted one another.  The Court has reviewed this finding and

8

again concludes that it was not error.  A party may not survive a motion for summary judgment "through reliance upon unsupported assertions" that are contradicted by the record.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  Moreover, "[a] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 (2d Cir. 1999).

In his deposition, Wilson stated that he was forbidden from working evening or weekend hours after he was reclassified.  (Kovalny Declaration, Exhibit 2 – Wilson Deposition (Doc. No. 50-2) at 44, 46–47.)  This assertion was not supported by the record and, indeed, the undisputed record included myriad instances in which Wilson turned down offers of evening or weekend hours both before and after his reclassification.  In his affidavit, Wilson stated that, on the contrary, he was *not* forbidden from working evening or weekend hours, but that he was forbidden from working in excess of 40 hours in a given week.  (Wilson Aff. (Doc. No. 53) ¶¶ 68, 72, 74.)  This assertion directly contradicts his prior testimony and cannot be used to create a dispute of material fact.  Accordingly, the Court finds that it did not err and Wilson is not entitled to reconsideration on this ground.

    c. **FLSA and NYLL Retaliation Claims**

Wilson next argues that the Court erred in failing to apply the appropriate standard in its discussion of the FLSA and NYLL retaliation claims.  Specifically, Wilson cites *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), to support his claim that the alleged "retaliatory hostile work environment" was an adverse employment action within the context of his retaliation claims.  Wilson did not argue that the *White* standard was applicable to his

9

retaliation claims in his motion papers; in fact, Wilson failed to cite any case law in support of his retaliation claims. Although Wilson is correct in noting that the Court applied the wrong definition of adverse employment action to his retaliation claims, this error is not grounds for reconsideration because, had the Court analyzed the claims under the correct standard, it would still have determined that Wilson failed to set forth a *prima facie* retaliation case under either the FLSA or the NYLL.

Retaliation claims brought under the FLSA and NYLL are evaluated using the three-step *McDonnell Douglas* burden-shifting framework. *See Mullins v. City of New York*, 626 F. 3d 47, 53 (2d Cir. 2010). At the first step, the plaintiff must establish a *prima facie* case of retaliation by showing "(1) [he] engaged in a protected activity; (2) [his] employer was aware of this activity; (3) the employer took adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Summa v. Hofstra Univ.,* 708 F.3d 115, 125 (2d Cir. 2013) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

To show that he suffered an adverse employment action within the context of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (internal quotations and citations omitted). This standard is broader than the standard used to determine whether a plaintiff was subject to discrimination. However, the Supreme Court has explained, "We speak of material adversity because we believe it is important to separate significant from trivial harms…. An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all

10

employees experience." *Id*.  In evaluating whether an act constitutes an adverse employment action, the Supreme Court has advised that this inquiry is highly fact-intensive: "Context matters.  The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships…." *Id*. at 69.  Nevertheless, "the provision's standard for judging harm must be objective" and assess the facts based on the reactions of a *reasonable* employee, not "unusual subjective feelings." *Id*. at 68.

Though "the application of pre-existing disciplinary policies to a plaintiff 'without more, does not constitute adverse employment action,'" *Mullins*, 626 F.3d at 53 (quoting *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006)), a plaintiff can establish a causal connection between a disciplinary action and a plaintiff's protected activity "through evidence of retaliatory animus directed against a plaintiff by the defendant," *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991) (internal quotation marks and citation omitted), or "by showing that the protected activity was closely followed in time by the adverse action," *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (citation omitted).  To suffice as indirect proof of retaliatory motive, the Supreme Court has suggested that the temporal proximity "must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam) (internal quotation marks and citation omitted).  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001).  However, "courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Flood*

11

*v. UBS Global Asset Mgmt.*, 10-CV-0374 (RJH), 2012 U.S. Dist. LEXIS 12113, at *17 (S.D.N.Y. Feb. 1, 2012).

  Wilson repeatedly alleges that defendant inflicted upon him a toxic workplace environment in retaliation for his protected activity, which, confusingly, he refers to interchangeably as a "retaliatory hostile work environment" or "harassment."  The Court addressed Wilson's hostile work environment discrimination claim separately in the Prior M&O at Section I, pages 21–23.  Wilson argues, however, that the Court erred in failing to consider whether these slights constituted adverse employment events in the context of his retaliation claims.  Wilson provides scant details of the environment he complains of aside from concluding that he suffered from a retaliatory hostile work environment.  The few details he provides include moments when Aldea rolled her eyes at him or when Aldea or Pine appeared to be angry with him.  These behaviors do not rise above the petty slights and grievances that often take place at work and occur between coworkers.  Rolling eyes or becoming visibly frustrated with a coworker may be unkind behavior, but such conduct is too minor to be actionable as retaliation.  Accordingly, if the Court had considered whether the behaviors Wilson describes could constitute adverse employment events, the Court would have concluded that they do not.

  Wilson also asserts he experienced adverse employment actions during the following discrete events:  when he received an email from Pine on August 3, 2015, addressing his recent lateness and failure to follow Aldea's instructions not to contact a coworker during his vacation; a verbal warning on February 17, 2016, regarding failure to warn his supervisors of an anticipated absence during work hours; a written warning on February 19, 2016, for disruptive behavior; and a less-than-positive performance evaluation.  He further asserts that his termination on April 21, 2016, was an adverse employment action.

Neither the August 3, 2015, email nor the verbal warning on February 17, 2016, are materially adverse employment actions such that a reasonable person would be dissuaded from reporting discriminatory or illegal behavior.  The email, though close in time to Wilson's protected activity, came on the Monday following two days of unexpected absences during the workday, reminding Wilson to inform his supervisors if he would be late or absent.  The verbal warning, part of a heated conversation immediately preceding Wilson's departure from the office for a meeting, was also a reminder that he was required to inform his supervisors of his absences in advance.  No reasonable employee would interpret repeated reminders, given either verbally or over email, to inform one's supervisors in advance of one's absence as a substantial harm.

Wilson also alleges that his performance evaluation was an adverse event sufficient to make out his *prima facie* case. Wilson's performance evaluation, though it stated that he failed to meet expectations in several sub-categories, gave him an overall rating of "meets expectations." Though a negative performance evaluation can constitute an adverse employment action in the retaliation context, a performance evaluation that provides an overall rating of "meets expectations" is ordinarily not an adverse employment action.  *See Krinsky v. Abrams*, No. 01-CV-5052 (SLT) (LB), 2007 U.S. Dist. LEXIS 38376, at *36 (E.D.N.Y. May 25, 2007) (noting that, while a negative evaluation can constitute an adverse employment event, plaintiff's performance evaluations in the three years following his protected activity rated his work "satisfactory.")  Accordingly, Wilson's performance evaluation was not an adverse employment action.

Finally, Wilson claims he suffered an adverse employment action when he was denied the opportunity to earn overtime.  As the Court explained in section I.b, above, Wilson cannot

13

survive summary judgment through unsupported assertions or an affidavit contradicting his deposition testimony.

Even assuming that Wilson's termination, his February written warning, or his performance evaluation constituted adverse employment actions, he fails to demonstrate a causal nexus between these occurrences and his protected activity. "Although 'temporal proximity can demonstrate a causal nexus,' such proximity must be close." *Nicastro v. N.Y.C. Dep't of Design & Constr.*, 125 F. App'x 357, 358 (2d Cir. 2005) (summary order) (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001)). And where there was "an intervening causal event that occurred between the protected activity and the allegedly retaliatory" event, mere temporal proximity between the protected activity and the retaliatory event is insufficient to support an inference of a causal connection between the two. *Garcia v. Yonkers Bd. of Educ.*, 2018 U.S. Dist. LEXIS 142514, at *18 (S.D.N.Y. Aug. 21, 2018) (collecting cases).

Wilson's termination in April 2016 occurred more than eight months after his inquiry into his classification and was precipitated by the verbal altercation on April 21, 2016, in which Wilson repeated a sexist insult he allegedly heard from a coworker. Similarly, the February 19, 2016, written warning occurred six months after Wilson engaged in protected activity and was preceded by the dispute and verbal warning two days prior. Wilson's performance review was provided to him in March 2016, seven months after his protected activity. This temporal gap is too great to support Wilson's allegation of retaliatory motive, and Wilson does not provide any other facts to suggest that these adverse events occurred under circumstances giving rise to an inference of retaliation.

Wilson therefore failed to meet his burden to state a *prima facie* case of retaliation under either the FLSA or the NYLL. Accordingly, had the Court applied the *White* standard in the M&O, it would not have changed its decision.

Because Wilson has not met the substantial burden required to prevail on a motion for reconsideration, it is denied.

## II. Defendant's Motion to Amend

Rule 58 requires the Court to enter a separate document for every judgment, subject to certain exceptions. Fed. R. Civ. P. 58(a). A party can request that the Court enter a separate judgment under subsection (d). Fed. R. Civ. P. 58(d). Where there are no pending matters to be resolved in an action, an entry of final judgment upon request of a party is appropriate under Rule 58(d). *See McGee v. Dunn*, 09-CV-6098 (FPS), 2015 WL 9077386, at *15 (S.D.N.Y. Dec. 16, 2015), *aff'd*, 672 F. App'x 115 (2d Cir. 2017) (after granting initial motions to dismiss certain claims against certain defendants, later granting summary judgment dismissing all claims, and ordering that the pretrial conference and trial be vacated and the action be dismissed and stricken from the active docket, Judge properly directed Clerk to enter final judgment pursuant to Rule 58); *Northrop Grumman Ship Sys., Inc. v. Ministry of Defense of Republic of Venezuela*, 20-cv-785 (HSO) (RHW), 2020 WL 3000801 at *2 (S.D. Miss. June 4, 2000) (where "there are no further pending matters to be resolved in this action, … the Court finds that entry of a separate final judgment is now appropriate. *See* Fed. R. Civ. P. 58."); *American Hosp. Ass'n v. Azar*, 19-CV-2084 (RC), 2019 WL 3037306, at *1–2 (D.D.C. July 10. 2019) (court reconsidered holding further proceedings and entered final judgment at defendant's request), *rev'd on merits*, 967 F.3d 818 (D.C. Cir. 2020), *cert. granted*, 2021 WL 274784 (U.S. July 2, 2021); *Barnes-Wallace v. Boy Scouts of Am.*, 00-CV-1726 (AJB), 2004 WL 7334946, at *4 (S.D. Cal. Apr. 12,

2004) (where "the Court has now adjudicated all claims … that mandate resolution, entry of final judgment under Rule 54(b) is not proper. Rather, the Clerk's office is directed to enter final judgment as to the entire action pursuant to Rule 58."), *aff'd in part, rev'd in part on the merits*, 704 F.3d 1067 (9th Cir. 2012).

Here, Wilson argues that entry of judgment would be "highly prejudicial." (Cross-Mot. for Reconsideration at 1.) However, he does not dispute that he orally withdrew three claims under the FLSA and NYLL at a pre-motion conference before this Court, and all remaining claims have now been adjudicated. Wilson fails to explain why the entry of final judgment would be prejudicial to him now that all of his claims have been dismissed by the Court or voluntarily withdrawn. Nor does he explain how correcting the Prior M&O's misstatement of the status of his remaining claims would be "clear error and would result in manifest injustice." Because there are no pending matters to be resolved in this action, Defendant's motion for entry of final judgment under Rule 58(d) is granted.

## CONCLUSION

For the reasons stated above, Wilson's motion for reconsideration is denied and defendant's motion for entry of judgment is granted. The Clerk of Court is respectfully directed to enter judgment in favor of defendant and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       July 15, 2021

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge